IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KANE COUNTY, UTAH (2), (3) and (4), a Utah political subdivision; and STATE OF UTAH, | **MEMORANDUM DECISION AND ORDER SUPPLEMENTING AUGUST 9, 2024 DECISION** |
| Plaintiffs, | |
| v. | Case No. 2:10-cv-1073 |
| UNITED STATES OF AMERICA, | *Consolidated with*:  2:11-cv-1031 |
| Defendant, | 2:12-cv-476 |
| SOUTHERN UTAH WILDERNESS ALLIANCE, et al., | Case No. 2:11-cv-1045 |
| Intervenor-Defendants. | |
| GARFIELD COUNTY (1) AND (2), a Utah political subdivision; and STATE OF UTAH, | Judge Clark Waddoups |
| Plaintiffs, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant, | |
| SOUTHERN UTAH WILDERNESS ALLIANCE, et al., | |
| Intervenor-Defendants. | |

On August 9, 2024, the court issued a Memorandum Decision and Order Re: Motions to Dismiss and Definition of a "Holder." *Kane County, Utah (2), (3) and (4) v. United States*, No. 2:10-cv-1073, 2024 WL 3760024 (D. Utah Aug. 9, 2024) (hereinafter the "*August 9th Decision*"). On August 21–22, 2024, the court held an evidentiary hearing on an issue pertaining to the K6000 House Rock Valley Road, which is one of the Bellwether roads addressed in the *August 9th Decision*. Evidence from that hearing bears on the *August 9th Decision*. Additionally, there appears to be some confusion about one of the holdings in the *August 9th Decision*. To address these issues, the court supplements its prior ruling. This decision and the *August 9th Decision* are to be read together.

## I.    THE STATE AND BELLWETHER COUNTIES ARE HOLDERS OF VESTED TITLE

The *August 9th Decision* examined the history of when one holds vested title of an R.S. 2477 right-of-way. Following that examination, the court held that the United States cannot interfere with the rights of one who holds vested title of an R.S. 2477 right-of-way, and that if the United States does interfere with the rights of one who holds such title, then it constitutes a title dispute under the Quiet Title Act. *August 9th Decision*, 2024 WL 3760024, at *15, 25–30.

To determine whether the United States had interfered with the State and Bellwether Counties' rights as vested title holders, the court first had to determine whether Plaintiffs were holders of R.S. 2477 rights-of-way. The court concluded Plaintiffs were R.S. 2477 holders of the Eight Jurisdictional Roads. *Id.* at *3–5, 9–15. To the extent that ruling was unclear, the court

hereby clarifies that it has concluded Plaintiffs hold vested title[1] in the following roads:

1. K1300 Elephant Cove;

2. K4200 Kitchen Corral;

3. K4500 Willis Creek;

4. K8200 Sit Down Bench;

5. K8600 Little Valley;

6. K6000 House Rock Valley Road;

7. K9000 Hole-in-the-Rock Road as it traverses Kane County; and

8. G9000 Hole-in-the-Rock Road as it traverses Garfield County.

## II.    CLASS B ROADS

Class B roads are more than just a road on a map.  As explained in the *August 9th Decision*, Class B roads are inspected and inventoried regularly by the State because the State provides funding to counties to help maintain such roads.  *August 9th Decision*, 2024 WL 3760024, at *4. The roads are maintained to the level that a two-wheel drive passenger vehicle may traverse them. *Id.*  If a road falls into disrepair, the road is reclassified as a primitive road on the Class B map.  *Id.* Dating back to 1937, the Class B maps have been done in cooperation with the federal government. *Id.*  Thus, if a road is on a Class B map, it is there because it went through an exacting process to be there, and its classification holds a specific meaning.

---

[1] As explained in the *August 9th Decision*, one who has vested title of an R.S. 2477 right-of-way holds the rights granted by R.S. 2477 and may exercise those rights.  *August 9th Decision*, 2024 WL 3760024, at *15–17.  When there is a dispute as to whether title vested, title may be quieted and perfected under the Quiet Title Act, 28 U.S.C. § 2409a.  *Id.* at *10.  Although the court has concluded Plaintiffs are R.S. 2477 holders of the Eight Jurisdictional Roads, that ruling is based on them holding vested title.  Title has not been perfected.

Notably, the Class B maps (i.e., the General Highway Maps) that were prepared and issued prior to 1976 were not done in preparation for litigation.  There was no incentive for the State to classify a road as a Class B road because it obligated the State to provide funding to help maintain the road.  Moreover, R.S. 2477 was still in effect, and there was no concern about documenting acceptance of the congressional grant because the law required no documentation.  *Id.* at *9.  Expenditure of public funds and maintenance of the Class B roads, prior to October 21, 1976, was sufficient to show acceptance of the R.S. 2477 grant by the State and counties.  *Id.* at *13 (citations omitted).

Accordingly, when the United States asserts it neither affirms nor denies one is a holder of a Class B road, the effect of that position means the United States is obligated to treat the Class B road as an R.S. 2477 right-of-way because title vested upon the State and counties acceptance of the grant, and the United States has not disputed that acceptance. Establishing additional requirements is not within the United States' authority.  This is so based on a congressional prohibition and caselaw.  *Id.* at *7–8.  Yet, the United States has treated the State and Bellwether Counties as though they do not hold title to any road absent judicial adjudication, and that treatment has interfered with Plaintiffs' vested property rights.  During the evidentiary hearing on August 21–22, 2024, the United States' practice was evident.

III.     **K6000 HOUSE ROCK VALLEY ROAD, CULVERTS, AND TITLE V**

   A.     **Class B Status and Safety Concerns**

Since 1950, the K6000 House Rock Valley Road has been classified as a Class B road, as confirmed by its appearance on the 1950 Kane County General Highway Map.  *August 9th Decision*, 2024 WL 3760024, at *4 & n.7; *see also* Pls. Ex. 176, at 3.   The United States alleges

4

that it neither affirms nor denies Plaintiffs are an R.S. 2477 holder of the House Rock Valley Road. In practice, however, it has treated Plaintiffs as non-holders.

The House Rock Valley Road travels south from Highway 89 for about ten miles until it reaches the Arizona state line.  Hr. Tr., Vol. 1, at 16, 137, 211 (ECF No. 811).   It then proceeds into Arizona for approximately nine more miles.  *Id.* at 137–38.  In addition to agricultural uses of the road, tourism draws many to use the House Rock Valley Road to access such features as the Wire Pass trailhead, the Wave, the Maze, the Buckskin Gulch trailhead, the Vermilion Cliffs National Monument, and so forth.  *Id.* at 19, 27–28, 188, 199.  The Wave is a "bucket list destination," where some vie for years to obtain a permit to hike into the area.  Hr. Tr., Vol. 2, at 243, 245 (ECF No. 812).

From the Utah side, before reaching the tourist attractions, the House Rock Valley Road dips down into a wash area, known as Buckskin Wash, for a short stretch.  *See* Hr. Tr., Vol. 1, at 18, 179, 194 (ECF No. 811) (stating area is in a low spot).  When there is significant rain, it floods the House Rock Valley Road where it crosses Buckskin Wash.  *See* Hr. Tr., Vol. 2, at 243 (ECF No. 812).  The flood waters also bring debris down into the wash and contribute to that stretch of the House Rock Valley Road becoming impassable during storms.  *See* Hr. Tr., Vol. 1, at 173, 178, 206 (ECF No. 811) (testifying that material is cleared from the wash and piled in an area beside the road and the need to funnel debris as it comes down the wash).  This impacts the safety of those traveling in passenger vehicles on the Class B House Rock Valley Road, as vehicles become stuck in the wash.  Hr. Tr., Vol. 2, at 243–44 (ECF No. 812); Sheriff Glover Lttr., at 1, 6–9 (Pls. Ex. 991).

At times, people have parked on the north side of the wash and then walked through the wash to reach the Wave, so they do not miss the experience.  Hr. Tr., Vol. 2, at 244–45 (ECF No. 812); Sheriff Glover Lttr., at 1 (Pls. Ex. 991).  This also places individuals at risk.  Flooding at the Buckskin Wash crossing further raises concerns about whether rescue and medical personnel may reach the tourists sites when there is a medical emergency.  *See* Hr. Tr., Vol. 2, at 280–81.  Whenever the crossing floods, Kane County has to clear the debris and repair the road to make it passable again.[2]  Hr. Tr., Vol. 1, at 43–44 (ECF No. 811).

### A.  Culverts

#### i.  Buckskin Wash Box Culvert

To address the public safety and maintenance issues, Kane County notified the BLM that it intended to install eight-foot box culverts at the Buckskin Wash crossing,[3] and that such installation would be within the disturbed area[4] of the House Rock Valley Road.  *Id.* at 192–93,

---

[2]  Following the decision of *The Wilderness Society v. Kane County, Utah*, 581 F.3d 1198 (10th Cir. 2009) (hereinafter the "*Original TWS Case*"), Kane County ceased regular maintenance of roads for a three or four year period, until a Tenth Circuit en banc panel reversed the *Original TWS Case*.  *See* Hr. Tr., Vol. 1, at 51, 189–90, 201–02 (ECF No. 811); Lttrs. (Pls. Exs. 582, 589).  At that point, Kane County resumed regular road maintenance.  Because the United States neither affirms nor denies Kane County's R.S. 2477 rights, the United States accepts the benefits of maintained roads, but does so without conceding Kane County maintains roads as of right under R.S. 2477.

[3]  The project involves connecting and sealing box culverts together in the wash, such that it is one project at one location, but involves the installation of more than one box culvert at the site.

[4]  Although the court has held that Plaintiffs hold vested title in the House Rock Valley Road, the court has made no determination about scope of the road.  That issue is stayed until after the court resolves the Section 2409a title dispute concerning the House Rock Valley Road.  *See* Order, at 4 (ECF No. 815) (staying "[i]ssues pertaining to scope . . . until the court has issued its decision on title for the 16 remaining Bellwether roads").

6

209; Hr. Tr., Vol. 2, at 288–89 (ECF No. 812) (citing Notice[5] (ECF No. 783)).  Kane County

notified the BLM about the project in a cooperative effort to work with the BLM because the

culvert installation would impact those attempting to travel on the road, including those with

permits to hike the Wave.  Hr. Tr., Vol. 1, at 191–93 (ECF No. 811).

Although the BLM has taken the official position in this case that it neither affirms nor

denies that the House Rock Valley Road is an R.S. 2477 right-of-way, the BLM informed Kane

County that the transportation plan ("Monument Plan") for the Grand Staircase Escalante National

Monument ("Monument") precluded Kane County from installing the culverts at Buckskin Wash

because it was an installation of new culverts and that constituted an improvement.  Hr. Tr., Vol.

1, at 53–56, 73–74 (citing Monument Plan, TRAN-7, at 47 (Df. Ex. 1795)).[6]  According to Harry

Barber, Paria River District manager, the Monument Plan governed his decision, and he "did not

take into account whatever rights" Kane County held as an R.S. 2477 holder.  *Id.* at 12, 53–56, 73–

74, 104.  He acknowledged a culvert was necessary, but testified the Monument Plan precluded

the work because it was not maintenance.  *Id.* at 53, 74.

Kane County, however, put on evidence dating from 1972 to the present to show that

installation of culverts, including installation in locations where culverts never have been, is and

has been part of standard road maintenance in Kane County.  The following are some of the

---

[5]  The April 2024 notification was not the first time Kane County reached out to the BLM about the culvert project. Communications started as early as 2019 when the Kane County road maintenance director sent letters to the BLM about the County's intended plans.  Hr. Tr., Vol. 1, at 192–93 (ECF No. 811); Lttr., at 2–3 (Pls. Ex. 987).  The project has been delayed many years.

[6]  The pincite refers to the pagination on the bottom-right of the page, but when following the pdf numbering, TRAN-7 is on page sixty-two of the document.

transcript and exhibit references on this point:  (1)  Hr. Tr., Vol. 1, at 139–40 (ECF No. 811); Road Work Notebook, at 4 (Pls. Ex. 371) (noting on December 2, 1972, culvert (pipe) "brought for Sink Valley Road" that was 50 feet long and 5 feet in diameter); (2) Hr. Tr., Vol. 1, at 140–42 (testifying about installing a new culvert on Sand Dunes Road around 1993 or 1994 that was 80-feet long); Road & Culvert Photographs (Pls. Exs. 320, 321) (showing size of the Sand Dunes culvert exposed following a flood); (3) Hr. Tr., Vol. 1, at 142–45 (testifying about installing a new culvert in a different location on Sand Dunes Road in 2022); Road & Culvert Photographs (Pls. Ex. 978) (showing flood impact on road and culvert installation as part of road repair); (4) Hr. Tr., Vol. 1, at 147 (testifying there are "20 to 25 culverts on the Kane County side of that Hole In the Rock Road"); (5) Hr. Tr., Vol. 1, at 147–49 (testifying about installing a culvert on the Cottonwood Road in 2012); Aerial Pinpoint Location of Culvert (Pls. Ex. 975); (6) Hr. Tr., Vol. 1, at 149–50 (testifying about assignment to identify culvert locations and sizes); Notebook (Pls. Ex. 976) (listing locations and sizes of over 60 culverts installed on Skutumpah and Cottonwood Road); (7) Hr. Tr., Vol. 1, at 150–52, 157–58 (testifying about app to mark culvert locations); Aerial Photograph (Pls. Ex. 979) (using app to mark location of 28 culverts on Kitchen Corral Road and Docks Road).

Although Kane County has now started to track its culvert installations, Bert Harris, Kane County road maintenance director, testified that in the past the County did not track them.  "It was just . . . part of the maintenance that we do day to day."  Hr. Tr., Vol. 1, at 134, 151–152.  When the County sees a need, a culvert is installed to help maintain the road rather than improve it.  *Id.*

at 152–53.  Last year, Mr. Harris purchased approximately fifty culverts,[7] and the County uses

those culverts regularly as "part of a routine maintenance."  *Id.* at 222.  Historically and to the

present, the County does not notify or involve the BLM when it installs a culvert typically.  *Id.* at

144–45, 147, 149, 154  This is so even when the County has installed box culverts in other

locations.  *See id.* at 168–71, 182 (testifying about how many box culverts have been installed

since 2008).

The BLM put on no contrary evidence about the absence of BLM involvement with Kane

County's culvert installations, and no evidence that the BLM has stopped Kane County from

installing culverts at any other location in Kane County.  Mr. Barber moved to Kane County, Utah

around 1996.  *Id.* at 14.  He has worked as a wildlife biologist, Monument manager, Kanab Field

Office manager, and now as the Paria River District manager overseeing the managers for the

Kanab Field Office and Monument.  *Id.* at 13, 29, 46.  Since 1997, when Mr. Barber became the

Kanab Field Office manager, he has never authorized a culvert installation or precluded a culvert

installation until the one at Buckskin Wash. *Id.* at 47, 56, 88, 96.  Rather, only on one occasion

was Mr. Barber involved in "some discussions on a culvert," where, as a courtesy, Kane County

informed the BLM how it planned to address a washout that had occurred on a major road.[8]  *Id.*

---

[7]  This does not mean culverts were installed in fifty locations because Mr. Harris testified "a lot
of times we'll put two pieces together to make one culvert."  Hr. Tr., Vol. 1, at 222 (ECF No.
811).

[8]  Sand Dunes Road is a major, paved road in Kane County.  Hr. Tr., Vol. 1, at 48 (ECF No. 811).
In the 1990s, the County installed a large culvert to help with maintenance of the road.  *Id.* at 141–
42.  Around 2017, a flood overwhelmed the culvert and washed away a portion of the road.  Road
& Culvert Photographs (Pls. Exs. 320–21); Trial Tr., at 1351–52 (B. Harris) (ECF No. 624).  Kane
County informed the BLM about what work it planned to do to repair the road, so the BLM was
aware of the circumstances and participated in some discussions.  Hr. Tr., Vol. 1, at 47, 49 (ECF

at 46–47.  Kane County has shown culvert installations have been done as part of the County's regular road maintenance.  It also has shown that public safety issues exist where the House Rock Valley Road crosses Buckskin Wash.

ii.     Title V Permit

Instead of refuting that culvert installations are a regular part of Kane County's road maintenance activities, the United States focused on Kane County having an alternative option to install the culvert at the Buckskin Wash crossing because the United States informed Kane County it could pursue a Title V permit.  Hr. Tr., Vol. 1, at 63–66 (ECF No. 811).  The United States put on evidence that it has worked cooperatively with Kane County, in the past, for the County to receive a Title V permit on other road projects.  Hr. Tr., Vol. 1, 66–71; Df. Exs. 2000 to 2003.

The United States approved the Paria Riverbank Stabilization Project when the Paria River was undercutting the Cottonwood Road.  BLM Decision (Df. Ex. 2003); Hr. Tr., Vol. 1, at 87.  "[O]ther than the riverbank" being "next to the Cottonwood Road," however, the project "had nothing to do with the road itself."  Hr. Tr., Vol. 1, at 87.  Instead, among other things, it involved the Clean Water Act's "dredge and fill permit" since "the county would be installing new material into the Paria River drainage."  *Id.* at 87–88, 225.  The Title V permit was not a road permit.  *Id.* at 88.

This is not to say that a Title V permit never pertains to an R.S. 2477 road.  It may when a project intrudes into areas outside of the County's rights as an R.S. 2477 holder.  The Buckskin Wash culvert project, however, is not of the same nature as the Paria Riverbank Stabilization

_____

No. 811).  Otherwise, the BLM played no role in the project.  *Id.*  Mr. Barber did not recall being involved in any other situations concerning culverts until the one at Buckskin Wash.  *Id.* at 47, 56.

project.  The United States has not been involved in culvert installation projects in Kane County.

By attempting to have the project turned into a Title V situation, where the United States may

impose discretionary terms and conditions on the permit, *see id.* at 102–03, the United States

interfered with Kane County's rights as an R.S. 2477 holder.

Because Plaintiffs hold vested title of the House Rock Valley Road, Plaintiffs either had a

right to install the culvert at Buckskin Wash as part of its standard maintenance,[9] or it had the right

to consult with the United States about the culvert installation, without the imposition of additional

terms and conditions of a Title V permit.  When the United States only considered the project

allowable under a Title V permit, it implicitly denied Plaintiffs are R.S. 2477 holders of the House

Rock Valley Road.

iii.   Categorical Exclusions

A culvert can make the difference between a road being passable or impassable during a

weather event.  In terms of a culvert's impact on the environment, however, the Department of

Interior has adopted categorical exclusions from NEPA requirements.  *See* DOI Existing

Categorial Exclusions (Pls. Ex. 971).  "Categorical Exclusion means a category or kind of action

that has no significant individual or cumulative effect on the quality of the human environment."

43 C.F.R. § 46.205 (2024).  Among other items, categorical exclusions include: "[i]nstallation of

---

[9]  In *SUWA v. BLM*, the Tenth Circuit Court of Appeals endorsed a definition that included installation of new culverts under the umbrella of an improvement rather than maintenance.  *SUWA v. BLM*, 425 F.3d 735, 749 (10th Cir. 2005) (hereinafter "*SUWA Decision*").  The word "culverts" appears in the *SUWA Decision* a total of one time because culverts were not at issue in that case. Given the history and practice of culvert installations in Kane County, and the United States' minimal involvement, a question exists about the definition, but the court does not resolve that issue here.

routine signs, markers, *culverts*, ditches, waterbars, gates, or cattleguards *on/or adjacent to roads* and trails *identified in any land use or transportation plan*, or eligible for incorporation in such plan." DOI Existing Categorial Exclusions, § 11.9(G)(2), at 6 (Pls. Ex. 971) (emphasis added).

The House Rock Valley Road has been identified in the Monument Plan as a road open to motor vehicle travel. *See* Hr. Tr., Vol. 1, at 23 (ECF No. 811). Thus, installation of a culvert on the House Rock Valley Road falls under a categorical exclusion, and the United States' position that the Monument Plan precludes the culvert installation is not due to NEPA concerns. It is based on the United States' position that until Plaintiffs have judicially adjudicated title, it does not need to treat Plaintiffs as R.S. 2477 holders. Such treatment implicitly disputes Plaintiffs' title claim.

## IV.     POSSESSION AND CONTROL

Earlier this year and again in August 2024, the United States asserted Kane County cannot engage in certain activities while a Quiet Title Act claim is pending because 28 U.S.C. § 2409a(b) expressly states, "[t]he United States shall not be disturbed in possession or control of any real property involved in any action under this section pending a final judgment or decree." Resp. to Req't for Hearing, at 6 (ECF No. 788); Resp. to Notice, at 3 (ECF No. 784). The United States has interpreted this to mean "until title may be quieted in favor of the County, . . . the County must abide by any instructions, restrictions, or limitations imposed by the Bureau of Land Management or any other representatives of the United States." Resp. to Notice, at 3 (ECF No. 784).

There is a limited amount of caselaw addressing this provision. Most cases pertain to situations where the United States has claimed full possession and control of the property at issue. *See e.g.*, *Cadorette v. United States*, 988 F.2d 215, 217 (1st Cir. 1993) (involving ownership dispute and condemnation action over eight acres of land claimed by the United States); *Cliffs*

*Plantation Timber Farm, LLC v. United States*, No. 5:05cv197, 2006 U.S. Dist. LEXIS 47185, at *2, (S.D. Miss. May 5, 2006) (disputing United States claim to sixteen acres of land and asserting the United States moved "boundary line marks"); *United States v. Real Prop. Titled in Name of Shashin, Ltd.*, 680 F. Supp. 332, 334–35 (D. Haw. 1987) (halting lienholder's foreclosure of property seized as part of drug-forfeiture).  The court is not aware of any case that interprets the statute as the United States has done.

Some of the Bellwether roads are closed under the Monument Plan, and the United States is exercising full possession and control over those roads.  Although the grounds for some of the closures are questionable, as long as the Quiet Title Action is pending, it does not appear that Section 2409a(b) allows Plaintiffs to disturb the United States in its possession and control over the closed roads.  For roads that are open under the Monument Plan, however, the United States is not in full possession and control of them.  The State and Bellwether Counties have ongoing involvement with the roads.  The Tenth Circuit has recognized that "'a public right-of-way can generally 'peaceably coexist' with an underlying ownership interest.'" *August 9th Decision*, 2024 WL 3760024, at *73 (quoting *Kane Cnty, (1)*, 772 F.3d 1205, 1216 (10th Cir. 2014)).  For roads that are open, this distinction provides a division line where the United States has full possession and control over the servient ownership interest, but not over the dominant right-of-way, during the pendency of this Quiet Title Action.

## CONCLUSION

This decision supplements the *August 9th Decision* and is to be read together with that ruling.  Plaintiffs hold vested title of the Eight Jurisdictional Roads.  The House Rock Valley Road is a Class B road.  Class B roads, by their nature and classification process, show the State and

counties' acceptance of the R.S. 2477 grant.  The United States' actions towards the Buckskin Wash culvert project constitute an implicit denial that Plaintiffs are R.S. 2477 holders of the House Rock Valley Road.

DATED this 25th day of September, 2024.

BY THE COURT:

Clark Waddoups
United States District Judge